Joseph PORTARO, Plaintiff,

v.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, Defendant.

No. 35880.

United States District Court
N. D. Ohio, E. D.

Jan. 10, 1962.

412

William J. Kraus, Cleveland, Ohio, for plaintiff.

Leslie R. Ulrich, Robert F. Hesser, Jamison, Ulrich, Hope, Johnson & Burt, Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

This is an action for a declaratory judgment in which plaintiff prays for a construction of a policy of insurance issued to Lady Beautiful, Inc. and to plaintiff that will require the defendant to defend an action brought by Louise Cooper against plaintiff herein and to pay any judgment that may be rendered against plaintiff in said action. In its answer defendant asserts that under the terms of the policy it is not obligated to defend the action brought by Louise Cooper against plaintiff and denies that it is under a duty to pay any judgment that may be rendered against plaintiff in said action. The case was submitted on the following agreed statement of facts:

1. Joseph Portaro is a citizen and resident of the City of Cleveland Heights, County of Cuyahoga and State of Ohio.

2. The defendant is a corporation duly organized under the laws of the State of Illinois and a citizen thereof and is engaged in the business of writing insur-

ance and issuing insurance policies and entering into insurance contracts and is licensed to conduct its business in the State of Ohio.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand Dollars ($10,000.00).

4. On or about July 30, 1958, the defendant issued a policy of insurance numbered 87–21–862 to Lady Beautiful, Inc. d/b/a Jo Portaro for a period of three years from and after July 30, 1958.

5. The following clauses in said insurance policy numbered 87–21–862 are relevant to the issues:

A) "I. Coverage A—Bodily injury liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person and caused by accident."

B) "II. Defense settlement and supplementary payments. With respect to such insurance as is afforded by this policy the company shall:

(a) defend any suit against the insured alleging such injury * * * and seeking damages on account thereof even if such suit is groundless, false or fraudulent * * *"

C) "III. Definition of Insured. The unqualified word 'insured' includes the named insured and also includes any executive officer, director or stockholder thereof while acting within the scope of his duties as such, * * *"

6. The following definition is relevant to the issues presented in plaintiff's complaint:

"3(d) Assault and battery. Assault and battery shall be deemed an accident unless committed by or at the direction of the insured."

7. Lady Beautiful, Inc. on September 12, 1959 was an Ohio corporation engaged in the business of operating what is commonly known as a beauty salon and that it operated and maintained a beauty salon at 1222–24 Huron Road, Cleveland, Ohio.

8. That on September 12, 1959 plaintiff Joseph Portaro was an executive officer, director and shareholder of Lady Beautiful, Inc., the named insured under Policy No. 87–21–862 and that plaintiff's duties as an officer of Lady Beautiful, Inc. included the duty of advising beauty operators employed by said corporation at its Huron Road salon; and that plaintiff as an officer was involved in the public relations of the salon.

9. That on September 12, 1959, and at various times prior to that date one Louise Cooper was a patron of the Huron Road salon operated by Lady Beautiful, Inc.

10. That on or about December 5, 1959 said Louise Cooper filed a civil suit against plaintiff in the Cuyahoga County Common Pleas Court alleging bodily injuries and damages arising from an alleged assault and battery by plaintiff herein, said action being case No. 731,800 and she prayed for judgment against plaintiff herein in the sum of $100,000.00.

11. That concurrently with the filing of said case No. 731,800 in the Court of Common Pleas against plaintiff Joseph Portaro, said Louise Cooper also filed a similar and independent suit for damages against Lady Beautiful, Inc. in the Court of Common Pleas of Cuyahoga County, being case No. 731,801.

12. That on December 11, 1959 plaintiff mailed to defendant insurance company the petition in case No. 731,800 and a letter requesting said defendant to proceed to defend him in said action.

13. That by letter dated December 28, 1959 defendant insurance company returned to plaintiff all papers relating to case No. 731,800 and stated that defendant was not obligated to afford plaintiff a defense in said case and to this letter plaintiff replied on December 31st, 1959.

14. That the defendant insurance company has undertaken the defense of Lady Beautiful, Inc. in case No. 731,801 under Policy No. 87–21–862.

15. That there exists between plaintiff Joseph Portaro and defendant insurance company an actual controversy as to

the rights, liabilities, duties and legal relations under and pursuant to said Policy No. 87–21–862 and more particularly the duty of said defendant insurance company to defend plaintiff in said Cuyahoga Common Pleas Court case No. 731,800 and/or pay any judgment that may be rendered against plaintiff in said action.

16. Offered as part of the evidence herein to be considered by the Court are (a) a specimen copy of Comprehensive General Liability Policy No. 87–21–862 marked "Exhibit A", (b) the original petition on file in this cause, (c) the original answer of defendant insurance company on file in this case and the admissions therein contained; (d) a copy of the petition and amended petition filed by Louise Cooper against Joseph Portaro in case No. 731,800 marked "Exhibits B and C", (e) a copy of the answer filed by Joseph Portaro in case No. 731,800 marked "Exhibit D", and (f) a copy of the letter of December 11, 1959 referred to in paragraph 16 hereof marked "Exhibit E" and a copy of the letters of December 28, 1959 and December 31, 1959 referred to in paragraph 17 hereof marked "Exhibits F and G."

After submission of the case it was discovered that the parties had failed to include in their stipulation an endorsement styled "Occurrence" Basis which, in pertinent part, provides:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability applies subject to the following provisions:

"1. In Insuring Agreement I, the words 'and caused by accident' and 'caused by accident,' whichever appear, are deleted, and elsewhere the word 'accident' is amended to read 'occurrence.'

"2. 'Occurrence' means an event, or continuous or repeated exposure to conditions, which unexpectedly causes injury during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premise's location shall be deemed one occurrence.

"3. The premium for this indorsement shall be TWO % of the Bodily Injury Liability premium determined in accordance with the other terms of the policy."

It was thereupon agreed that the above endorsement should be incorporated in and made a part of the stipulation of facts. The effect of paragraph 1 of said endorsement is to amend Coverage A of the policy as set out above to read:

A) "I. Coverage A—Bodily injury liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person."

and to amend paragraph 3(d) to read:

"3. (d) Assault and battery. Assault and battery shall be deemed an occurrence unless committed by or at the direction of the insured."

## DISCUSSION AND CONCLUSIONS OF LAW

▆▆▆ Portaro, as an executive officer and director of Lady Beautiful, Inc., is an insured and entitled to the benefits of the policy. Before its amendment the policy provided that the insurer would pay all damages for which the insured became liable for bodily injury caused by accident and would defend on behalf of the insured any suit seeking damages for such injuries. In its original form paragraph 3(d) provided that assault and battery shall be deemed an accident unless committed by or at the direction of the insured. It is settled in Ohio, whose law governs here, that an insurer's duty to defend a suit against its insured is dependent upon the allegations of the petition filed against the insured. Only if those allegations bring the case within the coverage of the policy is the insured bound to defend the action. Lessak v. Metropolitan Casualty Ins., 168 Ohio St. 153, 151 N.E.2d 730 (1958); Socony-Vacuum Oil Co. v. Continental Corp., 144

Ohio St. 382, 383, 59 N.E.2d 199; 30 O. J.2d, Insurance, 649. See also 50 A.L.R. 2d 465, 497. The petition filed by Louise Cooper in Common Pleas Court Case No. 731,800 alleges, inter alia, that plaintiff herein committed an assault and battery upon her. Under the original terms of paragraph 3(d) the insurer was not required to defend an action for assault and battery committed by the insured. The allegations of Cooper's petition therefore stated no claim against Portaro that the insurer was required to defend. Under the terms of the policy as amended, however, a more difficult question arises relative to the insurer's duty to assume the defense of the assault and battery action against Portaro. The endorsement eliminated accidental causation from Coverage A as an element of the insurer's liability and did not substitute liability predicated upon an "occurrence." Consequently Coverage A of the policy as amended obligates the insurer literally to pay on behalf of the insured damages for bodily injury irrespective of the cause of such injury or damage. Amended paragraph 3(d) defines assault and battery as "an 'occurrence' unless committed by or at the direction of the insured." Since the word "occurrence" does not appear in Coverage A the question arises whether its use in paragraph 3(d) is effective to impose a limitation upon the insurer's unqualified obligation to pay on behalf of the insured damages for bodily injury. Defendant concedes that the change in the policy from an "accident" to an "occurrence" basis could have been effected by using the word "occurrence" in Coverage A. If this were done the insuring agreement would read:

> "I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by occurrence."

Defendant contends, however, that since "occurrence" means "event" and since bodily injury is an event, there was no need to use the word "occurrence" in the basic insuring agreement. Defendant asserts that such use of "occurrence" would have been redundant and implies that it was in avoidance of such redundancy that the word "occurrence" was omitted from Coverage A. If the word "occurrence" as used in the endorsement were as broad in its connotations as the same word when used in its popular sense, defendant's argument would not be wanting in logic. Webster defines the term as:

> "A casual meeting. That which occurs, esp. adversely. Appearance or happening; as, the occurrence of a fire. Any incident or event, esp. one that happens without being designed or expected; as, an unusual event * * * Syn.—See event."

In common speech "occurrence" is synonymous with event and applies literally to anything that happens or occurs. Its application is not limited to the unexpected.

In pertinent part the term "occurrence" is defined in the endorsement as "an event * * * which unexpectedly causes injury * * *." As thus defined the term "bodily injury" in Coverage A is not the equivalent of "occurrence" or "event" but is the unintended or unexpected result of an event. The definition of "occurrence" in the endorsement is controlling in the construction of the policy and it is not a satisfactory explanation of the absence of that term from Coverage A to say that its use therein would have been redundant. The endorsement could have provided that the basic coverage was expressly limited to bodily injury arising from an "occurrence." The use of such language or words of similar import would not have been redundant. Construed literally, Coverage A broadly fixes the insurer's obligation to pay on behalf of its insured damages for bodily injury whether caused by the negligent or intentional acts of the insured. Paragraph 3(d) exempts the insurer from liability for an assault and battery committed by the insured.

**416**

■ Standing alone, each of the foregoing provisions of the policy is free from ambiguity. The provisions, however, are inconsistent with each other and create doubt and uncertainty as to the extent of the insurer's obligation under the policy. It is fundamental where there is ambiguity in a policy arising from obscure language or inconsistent contractual provisions the policy must be construed most favorably to the insured. 30 O.J.2d 225, § 215, and cases cited therein. Application of the above rule here would require a determination that the insurer was obligated to defend Cooper's suit against Portaro. Such a determination, however, would be contrary to public policy. In Rothman v. Metropolitan Cas. Ins. Co., 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169, the Ohio Supreme Court said:

"It is well settled from the standpoint of public policy that the act of intentionally inflicting an injury cannot be covered by insurance in anywise protecting the person who inflicts such injury."

See also Wilson v. Maryland Cas. Co., 377 Pa. 588, 105 A.2d 304, 50 A.L.R.2d 449.

■■ Plaintiff asserts correctly that the quoted statement from Rothman is dictum but it is nevertheless sound law and I have no doubt that if the question were squarely presented to an Ohio court its decision would be in harmony with the principle that a contract to insure against liability for damages arising from injury caused by the insured's intentional act is against public policy and void. Plaintiff argues that even if Rothman be regarded as stating the law of Ohio, the principle therein announced is inapplicable because he is merely seeking an order requiring defendant to provide a defense to the assault and battery action. This argument overlooks the fact that as a prerequisite to such an order this Court must find that the allegations in the Cooper petition bring that case within the coverage of the policy. A policy of insurance will not be so construed as to make it violative of the law if such a construction can fairly be avoided. 30 O.J. 218, § 207; Gillespie v. Security Mutual Life Ins. Co., 18 Ohio App. 164. It is a cardinal principal of the construction of insurance contracts that the intention of the parties shall control. 30 O. J. 217, § 206. Relevant also is the statement of the Sixth Circuit Court of Appeals in Peebles v. Prudential Life Ins. Co., 110 F.2d 76:

"One of the most satisfactory tests for the ascertainment of the true meaning of a contract is by placing ourselves in the position of the contracting parties and viewing all the facts and circumstances surrounding them to determine what was meant by the phrases and words of the instrument. A manifest intention thus appearing must prevail regardless of inapt expressions or careless recitals." (at p. 78)

See also 30 O.J. 218, § 206.

■ In construing such a contract the court must adopt that construction which best corresponds to the intention of the parties as ascertained from the language employed by them considered in its plain, ordinary and usual meaning and by assuming that the parties followed a course of rational action. 30 O.J. 217–218; Hoosier Condensed Milk Co. v. Doner, 96 Ohio App. 84, 121 N.E.2d 100.

■ An examination of the language of the policy and the endorsement when viewed in the light of surrounding circumstances establishes beyond question that the parties did not intend to enlarge the terms of the contract to impose upon the insurer the duty to indemnify the insured against liability for damage on account of bodily injuries caused by the insured's intentional act. Plaintiff does not argue to the contrary. In apparent recognition of the fact that no such enlargement was intended plaintiff says—"Plaintiff does not here deny that it may be argued with some justification that the policy as it presently stands does not change the defendant insurer's responsibility with regard to defending intentional tort claims against its in-

sured." Plaintiff's whole case rests upon his claimed right to the benefit of a construction of the policy most favorable to him. But, as indicated above, that rule is inapplicable where its invocation would produce results contrary to public policy and in conflict with the manifest intention of the parties. The construction for which plaintiff contends would render meaningless paragraph 3(d) of the policy. It is a settled principle of construction that effect must be given to every word, sentence and clause of the policy and no provision is to be disregarded as inconsistent with other provisions unless no other reasonable construction is possible. 30 O.J.2d, 220, § 209. Paragraph 3(d) is the only provision of the policy dealing directly and explicitly with defendant's duty to defend suits against the insured for assault and battery and it ought to and can be given effect. It is not uncommon for men to speak of the occurrence of an injury, the occurrence of sickness and the occurrence of death. The draftsman of the endorsement apparently considered "bodily injury," "sickness," and "death" appearing in Coverage A as occurrences and regarded the presence of these words in the insuring agreement as sufficient to limit the coverage of the policy to "bodily injury," etc. caused by "occurrence." The draftsman failed to distinguish between the use of the word "occurrence" in informal colloquial speech and its use in the formal and precise language of an insurance contract in which the term itself is defined. In the latter case the contract definition must be given effect. But even though the draftsman was in error in his understanding of the effect of the language of the insuring agreement as amended, the intention to limit the coverage of the policy to bodily injury resulting from occurrence is implicit in the agreement. It is a principle of construction applicable to contracts generally that—

"Whatever is necessarily implied in a contract is as much a part thereof as if expressly stated therein, but the implication must result from the language employed in the instrument or be indispensable to carry the intention of the parties into effect. In other words, necessary implication is as much a part of an instrument as if that which is so implied were plainly expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect—that is, if it is a necessary implication from the provisions of the instrument—the law will imply the obligation and enforce it." 12 Am.Jur. 765, 766, § 239.

The same principle applies in the construction of contracts of insurance. 30 O.J.2d, 223–224, § 212. Courts are careful and prudent not to make a contract speak where it was intended to be silent or to make it speak contrary to the intention of the parties but where necessary to clarify the obvious intention of the parties the Court may interpolate words or clauses. 30 O.J.2nd, 224, § 212. In United Life Fire & Marine Ins. Co. v. Foote, 22 Ohio St. 340, the court added the words "by fire" to the policy to clarify the obvious intention of the parties.

In order to express clearly that which is implicit in Coverage A it is necessary to add to that paragraph as amended the words "and caused by occurrence." With this addition Coverage A reads:

"Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by occurrence."

Plaintiff's prayer for a declaratory judgment is denied and the complaint is dismissed at plaintiff's costs.

An order may be prepared in accordance with the foregoing Findings of Fact and Conclusions of Law.