## Hoffman v. Shelby Insurance Co.

*Daniel F. Zeigler,* for plaintiff.
*Andrew Hermann,* for defendant.

LAVELLE, *P.J.,* January 8, 1986—This case raises the novel issue whether an insured may recover underinsured motorist benefits from his carri-

er after he has settled his claim against the tortfeasor-third-party's liability carrier for an amount less than the policy limits.

On July 1, 1985, plaintiff, James Frank Hoffman as administrator of the estate of Barbara Kay Hoffman (hereafter Hoffman) commenced this action against Shelby Mutual Insurance Company (hereafter Shelby Mutual) alleging that Shelby Mutual wrongfully denied underinsured motorist benefits due Hoffman.

Shelby Mutual responded by filing a preliminary objection in the nature of a demurrer to the complaint. After a careful review of the complaint and briefs submitted by the parties, and considering the able oral arguments of counsel, we agree with defendant that the complaint fails to state a cause of action and will sustain the demurrer.

## FACTS OF THE CASE

Our standard of review on demurrer is well-settled. Accepting as true all facts pled in the complaint and reasonable inferences drawn therefrom, we may not dismiss the complaint unless the law will not permit the recovery sought by the plaintiff. Stein v. Richardson, 302 Pa. Super. 124, 448 A.2d 558 (1982).

Considered in this light, the complaint reveals the following facts:

On October 24, 1984, Hoffman's decedent died as a result of injuries sustained when her car collided with a car driven by Scott Houser (hereafter Houser). Houser had liability insurance coverage with limits of $35,000. Hoffman settled the death claims against Houser for $32,000, giving Houser and his insurance company a joint tortfeasor's release.

After the settlement, Hoffman demanded $15,000 from Shelby Mutual on the basis of the underinsured motorist provisions of the decedent's own automobile insurance policy.

The underinsured motorist endorsement (hereafter UIM) contains the following pertinent provisions:

"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

Decedent's underinsured motorist coverage limits are $50,000. Plaintiff's demand represented the difference between the liability limits of Houser's policy and the underinsured motorist limits of the Shelby Mutual policy.

Shelby Mutual refused payment on the ground that the requisite condition for payment had not been met, viz. plaintiff had not exhausted the policy limits of Houser's liability coverage.

## DISCUSSION

Essentially, we are called upon to interpret the following language:

"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." (Complaint, Exhibit "A").

Interpretation of this provision is a matter of first impression in Pennsylvania. There are no reported opinions to date construing this policy language. The clause at issue here is commonly found in UIM endorsements. See, for example, Wert v. Picciano, 459 A.2d 697 (N.J. Super. L., 1983); Rutherford v. Tennessee Farmers Mutual Insurance Company, 608 S.W. 2d 843 (Tenn. Sup. Ct. 1980); Lick v.

Dairyland Insurance Company, 258 N.W. 2d 791 (Minn., 1977).

Plaintiff Hoffman argues that the policy language, in its use of the words "exhausted" and "settlement", is ambiguous, and that the ambiguity should be resolved so as to permit recovery by plaintiff in this case. We disagree.

Our rules of insurance policy construction are now firmly established:

"When we undertake to interpret a policy of insurance, as is true in interpreting other contracts as well, our goal is "to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." Votedian v. General Accident Fire and Life Insurance Corp., 330 Pa. Super. 13, 478 A.2d 1324 at 1326 (1984) quoting from Standard Venetian Blind Co. v. American Empire Insurance Co., 503 Pa. 300, 469 A.2d 563 (1983).

In our view, the language of the Shelby Mutual policy is as straight forward and lucid as the Ten Commandments handed down on Mt. Sinai. The endorsement plainly states in layman's terms that Shelby Mutual will pay under the UIM coverage *only* "after the limits of liability under any applicable bodily injury bonds or coverage have been *exhausted* by payment of judgments or settlements." (Emphasis added.)

The word exhaust means "to use up or consume completely; expend the whole of . . . to empty by drawing out the contents of." Webster's Dictionary, 3rd International Edition. The word does not sug-

gest or imply partial depletion or use of less than all.

Hoffman's complaint concedes that he settled his claim with Houser's insurance company for an amount which was $3,000 less than the $35,000 policy limits. Clearly, Houser's limits of liability were not exhausted by the settlement. Accordingly, UIM benefits were not triggered by the settlement under the plain and unequivocal language of the Shelby Mutual policy.

Public policy considerations as well as plain meaning interpretation supports our conclusion. The purpose of UIM coverage is to provide benefits in the event an insured has an accident with a culpable tortfeasor who has less coverage under his liability policy than is necessary to fully compensate the insured. Wert v. Picciano, supra, 459 A.2d at 659.

It is to provide excess coverage for accident victims not an alternative coverage.

Where an insured is awarded a judgment or accepts a settlement for less than the third party tortfeasor's policy limits, he has received all the compensation to which he is entitled for his injuries. Interpretation of the UIM provisions to permit further recovery, under such circumstances, would provide a bonanza to the insured in the form of an alternative coverage which is both beyond the pale of his own insurance contract and in excess of what he agreed was adequate compensation for his injuries.

We find persuasive and adopt the following from the defendant's brief:

"The implicit logic in requiring a plaintiff-victim to exhaust the available policy limits of a tortfeasor-third-party motorist is analogous to the requirement set forth under the Pennsylvania Guaranty Association Act, Act of November 25, 1970, P.L. 716, 40

P.S. §1701.101 et seq. Under that act, a plaintiff-victim must exhaust his or her rights under other applicable insurance policies before proceeding to recover from the State Insurance Guaranty Association. 40 P.S. §1701.503(a). This provision has been construed to require a plaintiff-victim to recover by way of judgment or settlement the entire amount of policy limits applicable to his or her claim or else be precluded from recovering from the Guaranty Association. White v. Accardo, 15 D.&C. 3d 609 (1980). The following statement set forth in White is equally applicable to circumstances such as those in the case at bar:

"To hold that such a settlement of a claim constitutes an 'exhaustion' of insurance rights would encourage collusive settlements and totally destroy the legislative scheme by making available to a claimant an 'alternative' source of funds rather than an 'excess' source as intended." Id. at 615. Similarly, plaintiff in the case at bar was required as a matter of law to exhaust the full amount of $35,000 available through the Aetna policy prior to recovering any amount under the underinsurance benefits provided by defendant."

A substantial number of the other jurisdictions which have considered this question under similar facts are in accord with our interpretation. Accord: Davidson v. U.S. Fidelity and Guaranty Co. 336 S.E. 2d 709 (N.C. App., 1985); Hagen v. J. C. Penney Casualty Insurance Co., 16 Ohio App. 3d 218, 475 N.E. 2d 177 (1984); Mitchell v. State Farm Mutual Auto Insurance Co., 318 S.E. 2d 288 (Va., 1984); Infante v. Texas Farmers Insurance Co., 640 S.W. 2d 321 (Tex. App. 9 Dist., 1982); Holly v. Royal Globe Insurance Co. 407 So. 2d 32 (La. App., 1982); Wert v. Picciano, supra; Dewbury v. Auto-Owners Insurance Company, 363 So. 2d 1077 (Fla. Sup.

1978). Contra: Nurmi v. Foremost Insurance Co., 376 N.W. 2d 293 (Minn. App. 1985); American States Insurance Co. v. Estate of Tollari, 362 N.W. 2d 519 (Iowa, 1985).

We also reject plaintiff's alternative argument that the $32,000 settlement constitutes substantial performance of the UIM policy provision and allows plaintiff to recover. We view the policy language, providing for payment only after a third party tortfeasor's policy limits have been exhausted, as a condition precedent to recovery of the benefits.

"Conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance. . ." Corbin on Contracts, §629.

Under Shelby Mutual's plainly worded insurance clause, the exhaustion of the policy limits is the "event" which triggers an insured's right to payment of UIM benefits. The Pennsylvania Supreme Court has long held that, regarding insurance policies, strict compliance is necessary with conditions precedent to payment of benefits:

"Under the terms of the policy under consideration the conditions were denominated 'conditions precedent'. They were definitely in the nature of absolute promises in reference to the risk. Therefore, the doctrine of substantial compliance has no application." Blue Ridge Textile Co. v. Travelers Indemnity Co. 407 Pa. 463, 181 A.2d 295 at 300 (1962).

Finally, there is no merit to plaintiff's argument that the rule of Hionis v. Northern Mutual Insurance Co., 230 Pa. Super. 511, 327 A.2d 353 (1974) precludes the grant of the demurrer. Hionis held that an insurer bears the burden of proving that it brought the pertinent policy limitations to the insured's attention.

In Standard Venetian Blind Co. v. American Empire Insurance Co., supra, the Supreme Court held that Hionis is not to be followed in cases where the insurance clause is clear and unambiguous. Since we have found no ambiguity in the policy language at issue, Hionis does not bar the grant of the demurrer. See also Haegele v. Pennsylvania General Insurance Co., 331 Pa. Super. 540, 479 A.2d 1005 (1985).

Finding that plaintiff may not recover under the facts alleged, we enter the following

## ORDER

And now, this January 8, 1986, upon consideration of the preliminary objections of defendant, Shelby Mutual Insurance Company, in the nature of a demurrer to the complaint, and plaintiff's answer thereto, the demurrer is sustained and plaintiff's complaint is dismissed with prejudice.