Everett LICK, Trustee of the Estates of Vera Edeburn and Her Son, Bruce H. Edeburn, Deceased, Appellant,

v.

DAIRYLAND INSURANCE COMPANY, Respondent.

No. 47260.

Supreme Court of Minnesota.

Sept. 30, 1977.

---

792

Abrams & Spector, Richard B. Abrams and Mitchell R. Spector, Minneapolis, for appellant.

Allen G. Christoffersen, St. Paul, for respondent.

Heard before PETERSON, KELLY and PLUNKETT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff appeals from summary judgment in favor of defendant, Dairyland Insurance Company, arguing that the insurance policy issued by defendant to plaintiff's decedents failed to satisfy the statutory mandate of Minn.St.1971, §§ 65B.25 and 65B.26(d), that insurers make available "underinsured motorist coverage" in every policy of automobile liability insurance. We affirm.

On July 2, 1974, Bruce H. Edeburn was killed in an automobile accident caused by the negligence of Elroy Hatten. On July 13, 1974, his mother, Vera Edeburn, died as a result of the injuries she sustained in the same accident. Vera Edeburn's two surviving children obtained judgment by stipulation against Hatten for $275,000. Hatten carried the minimum amount of liability insurance permitted by Minn.St.1971, § 170.25, subd. 3, the Safety Responsibility Act, and Hatten's insurer paid to plaintiff Everett Lick, trustee of the estates of Vera and Bruce Edeburn, the $20,000 policy limit.

The Edeburn vehicle was likewise insured under a policy providing the minimum liability coverage required by law: $10,000 for any one injury and $20,000 for any one accident. This policy, issued by defendant, also provided "underinsured motorist insurance" in the same amounts. The coverage was to be applicable in the event of injury caused by an "underinsured highway vehicle" defined by the policy to mean:

"  *   *   *   [A] highway vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance."

Defendant made available underinsured motorist insurance in order to comply with Minn.St.1971, § 65B.25, which provided that no motor vehicle liability insurance policy should issue in this state unless it made available certain supplementary coverage defined by Minn.St.1971, § 65B.26.[1] Minn. St.1971, § 65B.26(d), required:

"Beginning January 1, 1972, underinsured motorist coverage, whereby subject to the terms and conditions of such coverage the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon, to the extent of the policy limits on the vehicle of the party recovering or such smaller limits as he may select less the amount paid by the liability insurer of the party recovered against. His insurance company shall be subrogated to any amounts it so pays, and upon payment shall have an assignment of the judgment against the other party to the extent of the money it pays."[2]

After recovering the $20,000 maximum payable under Hatten's policy, plaintiff demanded payment of $20,000 in underinsured motorist benefits from defendant. Defendant refused to pay, contending that the statute and the policy authorize it to offset against the underinsured motorist limits the amount paid by the liability insurer; in this case, the underinsured motorist coverage does not exceed the amount recovered against the insured tortfeasor, and thus no underinsured motorist coverage is available.

■ Plaintiff interprets Minn.St.1971, § 65B.26(d), to provide that when the policyholder obtains judgment against another party in excess of the latter's insurance coverage, the policyholder can obtain payment on the unsatisfied judgment to the extent of his own underinsured motorist coverage. Contrary to plaintiff's argument, the statute does not provide that a motorist is "underinsured" relative only to the judgment recovered against him. Rather, a motorist is underinsured relative to the limits of underinsured coverage for which the recovering party has contracted. Minn.St.1971, § 65B.26(d), required an insurer to make available to supplementary underinsured motorist coverage in an amount equal to the liability coverage under the policy, or in such smaller amount as the party may select. The statute explicitly and unambiguously provided that *that* amount, *"less the amount paid by the liability insurer of the party recovered against,"* shall be paid by the insurer toward an unsatisfied judgment of its insured. (Italics supplied.)

■ The effect of this supplemental coverage is to enable an individual to ensure that should he be injured by one who carries liability insurance in an amount less than the minimum required by the Safety Responsibility Act, he will nonetheless have

1. The insured party was free to choose whether or not to carry the supplemental coverage. Minn.St.1971, § 65B.25.

2. Minn.St.1971, §§ 65B.25 and 65B.26(d), were repealed by L.1974, c. 408, § 33, subsequent to the time of the accident and reenacted as part of the Minnesota No Fault Automobile Insurance Act in substantially the same form. Minn.St. 65B.49, subd. 5.

available to him that full minimum amount.[3]

One consequence of the separate statutory provision for underinsured motorist coverage is that Minnesota avoids the problem, faced by numerous other jurisdictions, of having to define "*un*insured" motorist to include not only one without any insurance at all but also one with less insurance than the minimum required in the jurisdiction whose law applies to the accident. See, e. g., *Calhoun v. State Farm Mut. Auto. Ins. Co.,* 254 Cal.App.2d 407, 62 Cal.Rptr. 177 (1967); *Taylor v. Preferred Risk Mut. Ins. Co.,* 225 Cal.App.2d 80, 37 Cal.Rptr. 63 (1964); Woodroof, Fonseca, and Squillante, *Automobile Insurance and No-Fault Law,* § 7.11. If "uninsured" is not so defined, then an individual with uninsured motorist coverage who is injured by an uninsured motorist would be better off than an individual with the same coverage who is injured by one fully insured but under the laws of a jurisdiction whose minimum amounts are lower than those of the injured party's jurisdiction.

■ The word "underinsured" is one which has been used by courts and commentators to describe such situations where the tortfeasor was insured, but in an amount less than required by the laws of the injured party's state, and where the applicable statute referred only to "uninsured" motorists. See, e. g., *Security Nat. Ins. Co. v. Hand,* 31 Cal.App.3d 227, 107 Cal.Rptr. 439 (1973); Woodroof, Fonseca, and Squillante, *Automobile Insurance and No-Fault Law,* § 7.11. Thus, when the word was embodied in Minn.St.1971, § 65B.26(d), it was used in a way consistent with prior usage. Under the Minnesota statute or case law from other jurisdictions, the amount paid under the insurance policy of

the tortfeasor is properly deducted from the underinsured motorist coverage; it is only to the extent that the underinsured motorist coverage exceeds the tortfeasor's insurance that the tortfeasor is underinsured.

■ In support of its argument that defendant defeats the statutory mandate of Minn.St.1971, § 65B.26(d), by offsetting the underinsured motorist coverage by the amount paid by the liability insurer, plaintiff cites several "uninsured" motorist cases in which we invalidated insurers' attempts to limit uninsured motorist coverage by offsetting against it other available benefits. E. g., *In re Pleitgen v. Farmers Ins. Exch.,* 296 Minn. 191, 207 N.W.2d 535 (1973) (medical expense coverage purchased in addition to uninsured motorist coverage may not be offset against the latter); *Brunmeier v. Farmers Ins. Exch.,* 296 Minn. 328, 208 N.W.2d 860 (1973) (workers' compensation benefits may not be offset against uninsured motorist coverage). These cases are inapposite. The statute defining underinsured motorist coverage, unlike that defining uninsured motorist coverage, explicitly requires a setoff. Such a setoff is consistent with the policy underlying underinsured coverage, though not with that underlying uninsured coverage. The purpose of uninsured coverage is to provide an individual, injured by an uninsured motorist, with no less coverage than he would receive had the tortfeasor been insured for the minimum amount required under the Safety Responsibility Act. *Brunmeier v. Farmers Ins. Exch., supra.* The purpose of underinsured coverage is to provide an individual, injured by a motorist who carries less insurance than the minimum required in Minnesota, with no less coverage than the injured party would receive had the tortfeasor been

---

**3.** Plaintiff argues that because decedents' underinsured motorist coverage was in an amount equal to the minimum liability insurance permitted in Minnesota, the underinsured motorist coverage is illusory. It is true that the coverage would never be applicable in an accident with an insured Minnesota motorist, but only where decedents have been injured by a tortfeasor from a jurisdiction with lower minimums. Low premiums for this coverage

should reflect this small additional risk to the insurer. Although the trial court made no finding, of fact relative to whether a premium was charged to decedents, the record includes a letter sent by defendant to the commissioner of insurance soon after Minn.St.1971, § 65B.26(d), was enacted. In the letter, defendant advised the commissioner that defendant would charge no premium for the newly required supplemental coverage.

insured as required by the Safety Responsibility Act.

█ Where the tortfeasor carried liability insurance in an amount equal to the "underinsured motorist" coverage carried by decedents, the tortfeasor was not "underinsured." The trial court properly granted summary judgment in favor of defendant.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.